## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

CRAIG MEHR and NICK DAVIS,
individually and on behalf of all others
similarly situated,

                    Plaintiffs,

    v.

NRRM, LLC, d/b/a CARSHIELD,
STOPREPAIRBILLS.COM, VEHICLE
PROTECTION CENTER, and AUTO
SERVICE AGENCY, f/k/a NATIONAL
DEALERS WARRANTY, INC.; RUDGE
GILMAN, NICHOLAS HAMILTON, MARK
TRAVIS, and STEVE PROETZ,

                    Defendants.

CASE NO.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Craig Mehr and Nick Davis ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants NRRM, LLC, and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities, Rudge Gilman, Nicholas Hamilton, Mark Travis, and Steve Proetz ("Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.     The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), protects consumers from unwanted telemarketing calls and prerecorded voice messages. The TCPA also prohibits solicitors from calling anyone who has registered their telephone numbers with the National Do-Not-Call Registry, or have asked them to stop calling.

2.     Defendants violate the TCPA each and every day, through their use of automatic dialing equipment and robocalls to sell "vehicle service contracts." Defendants have harassed Plaintiffs and thousands of other people for years, sometimes calling the same number several

times in one day.  They ignore the prohibition on calling people who have signed up for the Do-Not-Call Registry, and they continue harassing people who ask them to stop calling.

3.       This illegal conduct must be stopped.  Plaintiffs ask this Court to award them and the proposed class statutory damages for each and every call Defendants have made, and to enjoin Defendants from ever making another telemarketing call in violation of the TCPA.

## I.       PARTIES

4.       Plaintiff Craig Mehr ("Plaintiff Mehr") is a citizen of Ohio, residing in Athens County, Ohio.

5.       Plaintiff Nick Davis ("Plaintiff Davis") is a citizen of Tennessee, residing in Davidson County, Tennessee.

6.       Defendant NRRM, LLC d/b/a CarShield, StopRepairBills.com, Vehicle Protection Center, and Auto Service Agency, f/k/a National Dealers Warranty, Inc. ("NRRM"), is a Missouri limited liability company with its principal place of business in St. Peters, Missouri.  Thus, NRRM is a citizen of Missouri.  NRRM does business in Illinois, Florida, Ohio, Tennessee, and throughout the entire United States.

7.       Defendant Rudge Gilman ("Defendant Gilman") is a citizen of Missouri, residing in St. Charles County, Missouri.  Defendant Gilman is a founder and, on information and belief, a former owner, President, and sole member of the Board of Directors of NRRM.

8.       Defendant Nicholas Hamilton ("Defendant Hamilton") is a citizen of Missouri, residing in St. Charles County, Missouri.  Defendant Hamilton is a founder, owner, and managing member of NRRM.

9.       Defendant Mark Travis ("Defendant Travis") is a citizen of Missouri, residing in St. Louis County, Missouri.  Defendant Travis is a founder, owner, and a managing member of NRRM.

10.     Defendant Steve Proetz ("Defendant Proetz") is a citizen of Missouri, residing in St. Charles County, Missouri.  Defendant Proetz is the general manager of NRRM.

## II.   JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

12.     This Court has personal jurisdiction over Defendants because they are located in this District, own real estate in this District, and a substantial part of the wrongful acts alleged in this Complaint were committed in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Venue is proper in this Divisional Venue, because one or more of the defendants reside in this division, and the claim for relief arose in this division.

## III.   THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

14.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

16.     The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry, or with that entity's company-specific do-not-call list.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d).  The TCPA provides a private cause of action to persons receiving calls in violation of 47 U.S.C. § 227(c)(5).

17.     Federal Communication Commission ("FCC") promulgated regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

18.     The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."  *See In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

## IV.     FACTUAL ALLEGATIONS

### A.     Factual Allegations Regarding Defendant NRRM

19.     NRRM was formed on December 31, 2009 through the merger of National Dealers Warranty, Inc. ("NDW") and Auto Warranty Protection Services, Inc. ("AWPS").

20.     Operating under the fictitious business names, NRRM is in the business of selling extended vehicle service contracts and product warranties.

21.     According to NRRM, customers pay for vehicle service contracts to cover certain future repairs to vehicles, and product warranties that cover repairs to vehicles after customers use engine additives and similar products.  *See NRRM, LLC, et al. v. MEPCO Fin. Co., et al.*, Case No. 1:10-cv-04642 (N.D. Ill. 2010), Dkt. No. 76 ¶ 2.

22.     Key to NRRM's strategy for soliciting customers is the use of an automatic telephone dialing system ("ATDS") and/or automated or prerecorded messages.

23.     NRRM uses ATDS equipment, including autodialers and predictive dialers, which have the capacity to store and/or produce telephone numbers to be called.  Predictive dialers connect the calling entity's agents only to calls where a person picks up the phone, so that the agents do not have to listen to unanswered calls, disconnected line messages, busy signals, answering machines, or fax machine signals.

24.     On information and belief, NRRM makes most of their calls using "spoofed" telephone numbers to mask its identity.

25.     Consumer Reports explain that "robocallers using [Voice over Internet Protocol technology] can quickly change their origin number or 'spoof,' that is, assume a different number." *See* Consumer Reports, "Rage Against Robocalls," July 28, 2015, available online at http://www.consumerreports.org/cro/magazine/2015/07/rage-against-robocalls/index.htm (last visited March 9, 2016).

26.     Recipients of these calls, including Plaintiffs, did not consent to receive such telephone calls.

27.     NRRM also makes calls using an ATDS and/or artificial or prerecorded voice to cellular telephones whose owners have not provided prior express consent to receive such calls. Plaintiffs received such calls without providing any type of prior consent.

**B.     Factual Allegations Regarding NRRM's Fictitious Business Names**

28.     NRRM has in the past and continues to operate under numerous fictitious business names with similar websites, such as "Vehicle Protection Center," "StopRepairBills.com," and "AutoServiceAgency.com."

29.     On May 13, 2011, NRRM registered Vehicle Protection Center as a fictitious name with the Secretary of State for the State of Missouri under charter number X01141445 and with the mailing address of 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376. *See* https://bsd.sos.mo.gov/Common/CorrespondenceItemViewHandler.ashx?IsTIFF=true&filedDoc umentid=8634710&version=1 (last visited March 9, 2016).

30.     The Vehicle Protection Center fictitious name registration also lists NRRM's address as 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.

31.     Vehicle Protection Center's website, www.vpcprotection.com, lists the company's address as 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376 and identifies

the company's Florida License number as W111454.  *See* https://www.vpcprotection.com/ (last visited December 21, 2015).

32.     On February 24, 2014, NRRM, LLC registered STOPREPAIRBILLS.COM as a fictitious name with the Secretary of State for the State of Missouri under charter number X01380013 and with the mailing address of 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.  *See* http://on.mo.gov/1qlEpE9 (last visited April 4, 2016).

33.     The STOPREPAIRBILLS.COM fictitious name registration also lists NRRM's address as 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.

34.     On February 24, 2014, Defendants Hamilton and Travis also registered STOPREPAIRBILLS.COM as a fictitious name with the Secretary of State for the State of Missouri under charter number X01379976 and with the mailing address of 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.  *See* http://on.mo.gov/21lgsaU (last visited April 4, 2016).

35.     StopRepairBills.com's website, stoprepairbills.com, lists the company's address as 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376 and also identifies the company's Florida License number as W111454.  *See* http://stoprepairbills.com/ (last visited April 4, 2016).

36.     National Dealers Warranty, Inc. dba StopRepairBills.com, NRRM's predecessor, owns and operates stoprepairbills.com.  *See* http://stoprepairbills.com/terms-of-use.php (last visited April 4, 2016); and http://stoprepairbills.com/privacy-policy.php (last visited April 4, 2016).

37.     On November 25, 2014, NRRM registered AutoServiceAgency.com as a fictitious name with the Secretary of State for the State of Missouri under charter number X001194656 and with the mailing address of 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.  *See* http://on.mo.gov/1pA7ZVF (last visited April 4, 2016).

38.     The AutoServiceAgency.com fictitious name registration also lists NRRM's address as 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.

39.     AutoServiceAgency.com's website, autoserviceagency.com, lists the company's address as 333 Mid Rivers Mall Drive, Saint Peters, Missouri 63376 and identifies the

company's Florida License number as W111454.  *See* https://autoserviceagency.com/ (last visited April 4, 2016).

40.     NRRM, LLC, d/b/a AutoServiceAgency.com, owns and operates AutoServiceAgency.com's website.  *See* https://autoserviceagency.com/terms.php (last visited April 4, 2016); and https://autoserviceagency.com/privacy.php (last visited April 4, 2016).

41.     As established above, NRRM, NDW, Vehicle Protection Center, StopRepairBills.com, and AutoServiceAgency.com all share the same address, 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.

42.     339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376 is owned by Triangle Real Estate, LLC.  *See* https://lookups.sccmo.org/assessor/details/265745D017 (last visited March 9, 2016).

43.     333 Mid Rivers Mall Drive, Saint Peters, Missouri 63376, the address used by AutoServiceAgency.com on its website, is located one building away from 339 Mid Rivers Mall Drive.

44.     333 Mid Rivers Mall Drive, Saint Peters, Missouri 63376 is also owned by Triangle Real Estate, LLC.  *See* https://lookups.sccmo.org/assessor/details/A860000095 (last visited March 9, 2016).

45.     On information and belief, Defendant Hamilton is an owner of Triangle Real Estate, LLC and, therefore, an owner of the properties located at 333 and 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.  *See* http://on.mo.gov/236ySCA (last visited April 4, 2016).

46.     Furthermore, the St. Charles County Assessor's Office specifies that NRRM paid the 2016 personal property assessment for the property located at 339 Mid Rivers Mall Drive, Saint Peters, Missouri 63376.

47.     NRRM, Vehicle Protection Center, StopRepairBills.com, and AutoServiceAgency.com also all share the same Florida license number, W111454.

48.     The Florida Department of Financial Services identifies the registered licensee for license number W111454 as NRRM, LLC dba Vehicle Protection Center.

49.     Additionally, numerous Better Business Bureau complaints link NRRM to Vehicle Protection Center.  *See* http://on.mo.gov/236ySCA (last visited April 4, 2016).

50.     108 of the 260 complaints posted on the Better Business Bureau website relate to "Advertising / Sales Issues," including, for example, one dated November 25, 2015.  *Id.*

51.     Many of these complaints state that Vehicle Protection Center makes repeated unsolicited calls, and ignored complainants' requests to stop calling.

52.     The Better Business website also lists Auto Service Agency, StopRepairBills.com, and NRRM as alternate business names for Vehicle Protection Center.  *Id.*

**C.   Factual Allegations Regarding Defendants Gilman, Hamilton, Travis, and Proetz**

53.     At all times material to the subject matter of this litigation, Defendants Gilman, Hamilton, Travis, and Proetz, acting alone or in concert with others, had the authority and responsibility to prevent or correct the unlawful telemarketing practices of NRRM, and formulated, directed, controlled, and participated in the acts and practices of NRRM that violated the TCPA, including the acts and practices set forth in this Complaint.

54.     In a Second Amended Petition for Preliminary and Permanent Injunction, Restitution, Civil Penalties and Other Court Orders ("Petition") filed by the State of Missouri against all Defendants, Case No. 0911-CV10922 in the Circuit Court of Jackson County, Missouri, the State alleged that Defendants Gilman, Hamilton, Travis, and Proetz wrote, approved, and distributed the sales scripts and recap scripts used by agents of NRRM in its unlawful telemarketing activities.

55.     The State further alleged that Defendants Gilman, Hamilton, Travis, and Proetz were all actively involved in managing the operations of NRRM, including the hiring, firing, and training of sales personnel and other representatives of NRRM who were directed to, and did, carry out the telemarketing practices that violated the TCPA.

56.     The State also alleged that Defendants Gilman, Hamilton, Travis, and Proetz established the employee compensation plans that rewarded employees for the number of contract sales completed per week.

57.     Defendants Gilman, Hamilton, Travis, and Proetz received notice of complaints from consumers concerning requests that NRRM stop calling them as well as copies of numerous actions by domestic and foreign governments against NRRM and Defendants Gilman, Hamilton, Travis, and Proetz personally regarding the unlawful telemarketing practices.

58.     Defendants Gilman, Hamilton, Travis, and Proetz are liable for the TCPA violations alleged in this action because they were directly involved in, authorized, and ratified NRRM's operations that violated the TCPA within the scope of their duties as officers and directors of NRRM.

59.     NRRM is an alter ego of Defendants Gilman, Hamilton, Travis, and Proetz, and a unity of interest and ownership exists between Defendants such that any separateness has ceased to exist, there is a commingling of property rights or interests such that Defendants function as one, and Defendants have acted in concert in doing the things alleged herein.  Additionally, the conduct that gives rise to the claims for relief alleged herein was committed by, or on behalf of, each Defendant and harmed Plaintiffs and the proposed Classes.

**D.     Factual Allegations Regarding Defendants' History of Telemarking Violations**

60.     Over the past several years, Defendants have repeatedly been the subject of enforcement actions regarding their unlawful business and telemarketing practices.  Enforcement authorities in both the United States and Canada have taken action against them.

61.     On March 6, 2008, the State of Missouri filed a Petition for Preliminary and Permanent Injunction, Restitution, Civil Penalties and Other Relief against National Dealers Warranty, Inc. (the predecessor entity to NRRM) in the Circuit Court of Jackson County, Missouri, Case No. 0811-CV02004, related to NDW's unlawful business practices, including allegations related to its unlawful telemarketing practices in the state of Missouri.

62.     The matter resolved on October 8, 2008, when a consent judgment and permanent injunction was entered requiring NDW to change how it did business.

63.     Included in the consent judgment was language barring NDW from:

Offering to sell MVECS [(motor vehicle extended service contracts)] through the use of automated telemarketing calls unless such calls are administered in full compliance with laws including, but not limited to, Do-Not-Call regulations/laws at both the state and federal level.

*See State of Missouri v. National Dealers Warranty, Inc. d/b/a "National Dealers Warranty," et al.*, Circuit Court of Jackson County, Missouri, Case No. 0811-CV02004 (2008).

64.     Two months later, the Superintendent of Financial Affairs (the "Superintendent") in British Columbia launched an investigation into Defendants' telemarketing practices.  *See* http://www.fic.gov.bc.ca/pdf/enforcement/trust/fia20090108.pdf (last visited March 8, 2016).

65.     Between December 6, 2008 and January 7, 2009, the Superintendent received 20 complaints from British Columbia residents regarding unsolicited telemarketing calls related to extended vehicle warranties.  *Id.*

66.     On January 8, 2009, the Superintendent completed his investigation and ordered NDW, Rudge Gilman, Mark Travis, Nicholas Hamilton, and Steve Proetz to cease business activities entirely in the province of British Columbia.

67.     The Superintendent specifically found that Defendants Gilman, Travis, Hamilton, and Proetz, "as directing and controlling minds" of NDW and AWPS, were "conducting the affairs of their companies such that might reasonably be expected to result in non compliance with the [British Columbia *Financial Institutions Act*] by conducting unauthorized insurance business in British Columbia."  *Id.*

68.     Missouri and British Columbia put Defendants on notice that their behavior was illegal, yet Defendants continued their activities unabated.

69.     On April 16, 2009, Verizon Wireless brought an action against NDW, and a number of similar entities, in the United States District Court for the District of New Jersey on behalf of Verizon Wireless customers and employees who received **millions** of ATDS generated

and/or automated or prerecorded calls on their cellular telephones in violation of the TCPA.  *See Cellco Partnership d/b/a Verizon Wireless v. National Dealers Warranty, Inc. d/b/a "National Dealers Warranty," et al.*, Case No. 3:09-cv-01814-FLW-DEA (D.N.J. 2009).

70.    On May 21, 2009, the federal court entered an injunction stating the following:

National Dealers Warranty, Inc. d/b/a "National Dealers Warranty," and any of its principals, members, officers, agents, servants, employees and those persons in active concert or participation with the Defendants who receive actual notice of this Order by personal service or otherwise, are hereby permanently enjoined and restrained from directly or indirectly making any calls using and automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to the cellular telephone of a Verizon Wireless customer or having such calls made on behalf of National Dealers Warranty, Inc. d/b/a "National Dealers Warranty"…

*Id.* at Dkt. No. 10.

71.    Shortly thereafter, on November 12, 2009, the State of Missouri **again** filed a Petition for Preliminary and Permanent Injunction, Restitution, Civil Penalties and Other Court Orders against NDW and Defendants Gilman, Travis, and Hamilton.  *See State of Missouri v. National Dealers Warranty, Inc. d/b/a "National Dealers Warranty," et al.*, Circuit Court of Jackson County, Missouri, Case No. 0911-CV10922 (2009).

72.    The Missouri Attorney General's Office announced that the Petition alleged unfair and deceptive practices violations, violations of Missouri's No-Call Law, and violation of the prior 2008 Consent Judgment against NDW.  *See State of Missouri v. National Dealers Warranty, Inc. d/b/a "National Dealers Warranty," et al.*, Circuit Court of Jackson County, Missouri, Case No. 0911-CV10922 (2009).

73.    Despite these numerous enforcement actions, Defendants continued their telemarketing practices.  In fact, the St. Louis Post-Dispatch reported that Defendants "racked up more than 200 complaints filed with the Better Business Bureau" in 2010 alone, with many of the complaints "claiming that telemarketers coerced consumers into buying the aftermarket vehicle-protection plans that seldom paid out claims."  *See* Matt Hathaway, *BBB: Area Service-*

*Contract Seller Continues Bad Practices, Got 200 Complaints Last Year*, St. Louis Post-Dispatch, Jan. 6, 2011, available online at http://bit.ly/1iyfWqc (last visited April 4, 2016).

74.     In response to this growing number of complaints, Missouri filed yet another Petition for Preliminary and Permanent Injunction against NRRM, NDW, and Defendants Gilman, Hamilton, Travis, and Proetz on March 18, 2011 related to their unlawful business and telemarketing practices.

75.     The action resulted in yet another consent judgment, entered on November 26, 2012.  Defendants were:

> Permanently enjoined and restrained from violating §§ 375.144, 385.208, 407.020, 407.1073, and 407.1076 RSMo in the offer, negotiation, solicitation or sale of motor vehicle extended service contracts or any other vehicle repair coverage over the telephone into or from the state of Missouri…

*State of Missouri v. NRRM, LLC, et al.*, Circuit Court of Jackson County, Missouri, Case No. 1116-CV07196 (2011), Consent Judgment and Permanent Injunction as to Defendant NRRM, LLC § IV.

76.     The injunction specifically enjoined Defendants from violating Missouri's Telemarketing Law, § 407.1076 RSMo, which, among other things, makes it unlawful to:

> (3) Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;
>
> (4) Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded;
>
> …
>
> (5) Engage in telemarketing to a consumer's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called consumer's location[.]

Mo. Rev. Stat. § 407.1076.

77.     Despite the numerous enforcement actions against Defendants, including three consent judgments ordering Defendants to change their telemarketing practices to comply with state and federal law, Defendants continue to make calls in violation of those laws.

**E.     Factual Allegations Regarding Plaintiff Mehr**

78.     Plaintiff Mehr is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

79.     Plaintiff Mehr is the account holder of an AT&T Mobility cellular telephone number.

80.     Plaintiff Mehr registered his cellular telephone number, (740) 590-XXXX, on the National Do-Not-Call Registry on June 16, 2015.

81.     In or around August 2014, Plaintiff Mehr received a telemarketing call on his cellular telephone, (740) 590-XXXX, from, or on behalf of, Defendants.

82.     The call was initiated for purposes of marketing Defendants' extended vehicle warranty products.

83.     When Plaintiff Mehr answered the call, there was a lengthy pause and a click before a person came on the line, which indicated to him that the call was made using an ATDS.

84.     The caller stated that they were calling from "Vehicle Protection Center" or "Vehicle Processing Center," and attempted to persuade Plaintiff Mehr to purchase an extended warranty for his vehicle.

85.     Plaintiff Mehr asked the caller to identify the company on behalf of which it was calling, and the caller identified Toyota.

86.     Plaintiff Mehr was not interested in purchasing an extended warranty and requested that Defendants stop calling him.

87.     Notwithstanding his request that Defendants cease calling him, Plaintiff Mehr continued to receive numerous ATDS generated and/or automated calls on his cellular telephone

from, or on behalf of, Defendants, including, but not limited to, on the following dates: August 27, 2014, and in 2015, June 10, June 11, June 12, June 13, July 15, July 23, July 27, August 4, August 18, September 4 (two calls), October 15, and October 28. When he asked, they would identify themselves as calling from "Vehicle Protection Center" or "Vehicle Processing Center."

88.    Each time Plaintiff Mehr answered a call from, or on behalf of, Defendants, there was a lengthy pause and a click before a live person came on the line, which indicated to him that the calls had been made using an ATDS.

89.    Furthermore, each time he answered a call from, or on behalf of, Defendants, Plaintiff Mehr requested that Defendants stop calling him.

90.    A substantial number of these calls were received thirty or more days after Plaintiff Mehr explicitly instructed Defendants to stop calling him.

91.    Many of the above-described calls occurred after Plaintiff Mehr registered his cellular telephone number, (740) 590-XXXX, with the National Do-Not-Call Registry.

92.    Plaintiff Mehr did not provide prior express consent to receive ATDS generated and/or automated or prerecorded calls on his cellular telephone from, or on behalf of, Defendants.

93.    Plaintiff Mehr's privacy has been violated by the above-described calls from, or on behalf of, Defendants and they constitute a nuisance as they are annoying and harassing.

94.    Defendants are responsible for making the above-described ATDS generated and/or automated or prerecorded calls.

95.    Defendants have made a significant number of ATDS generated and/or automated or prerecorded calls to persons on their cellular telephones in Ohio and throughout the entire United States.

96.    Defendants have made a significant number of telemarketing calls to persons who have registered their telephone numbers with the National Do-Not-Call Registry in Ohio and throughout the entire United States.

97.     Defendants have made a significant number of telemarketing calls to persons who have explicitly requested that Defendants stop calling them in Ohio and throughout the entire United States.

98.     Defendants intend to continue to make similar ATDS generated and/or automated prerecorded calls to persons on their cellular telephones in Ohio and throughout the entire United States.

99.     Defendants intend to continue to make similar ATDS-generated and/or automated or prerecorded calls to persons who have registered their telephone numbers with the National Do-Not-Call Registry in Ohio and throughout the entire United States.

100.    Defendants intend to continue to make similar ATDS-generated and/or automated or prerecorded calls to persons who have explicitly requested that Defendants stop calling them in Ohio and throughout the entire United States.

**F.    Factual Allegations Regarding Plaintiff Davis**

101.    Plaintiff Davis is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

102.    Plaintiff Davis is the account holder of an AT&T Mobility cellular telephone number.

103.    Plaintiff Davis registered his cellular telephone number, (615) 336-XXXX, on the National Do-Not-Call Registry in late 2011.

104.    In late 2011, Plaintiff Davis began receiving telemarketing calls on his cellular telephone from, or on behalf of, Defendants.

105.    The calls were initiated for purposes of marketing Defendants' extended vehicle warranty products.

106.    When Plaintiff Davis answered the calls, there was a lengthy pause and a click before a person came on the line, which indicated to him that the calls were made using an ATDS.

107.    The callers informed Plaintiff Davis that they were calling from either "Vehicle Protection Center," "Vehicle Processing Center," or "Vehicle Processing Department," and attempted to persuade him to purchase an extended warranty for his vehicle.

108.    Plaintiff Davis was not interested in purchasing an extended warranty and consistently informed Defendants of same.

109.    Furthermore, in response to each and every call, Plaintiff Davis directly requested that Defendants remove him from their calling list.

110.    On multiple occasions, Plaintiff Davis asked to speak with a manager.

111.    On each occasion, Plaintiff Davis asked the manager to remove him from Defendants' calling list.

112.    Notwithstanding his requests that Defendants cease calling him, Plaintiff Davis, thereafter, continued to receive numerous ATDS generated calls on his cellular telephone from, or on behalf of, Defendants.

113.    In fact, Plaintiff Davis often has received three to four calls per week from, or on behalf of, Defendants; and sometimes, a call or more every day.

114.    For instance, on July 29, 2015, Plaintiff Davis received three ATDS generated calls on his cellular telephone from, or on behalf of, Defendants.

115.    On October 2, 2015, Plaintiff Davis received two telemarketing calls on his cellular telephone consisting of prerecorded messages from, or on behalf of, Defendants.

116.    The prerecorded messages stated words to the effect that the calls were marketing Defendants' extended vehicle warranty products.

117.    On October 5, 2015, Plaintiff Davis again received three ATDS generated calls on his cellular telephone from, or on behalf of, Defendants.

118.    In each instance, the callers identified "Vehicle Processing Center" or "Vehicle Protection Center" as the company on behalf of which they were calling.

119.    On October 9, 2015, Plaintiff Davis received another telemarketing call on his cellular telephone from, or on behalf of, Defendants.

120.     The caller identified himself as "Leonard" of the "Vehicle Processing Center" and attempted to persuade Plaintiff Davis to purchase an extended warranty for his vehicle.

121.     In fact, each of the above-described calls was initiated for purposes of marketing Defendants' extended vehicle warranty products.

122.     When Plaintiff Davis answered each of the July 29, October 5, and October 9, 2015 calls, there was a lengthy pause and a click before a live person came on the line, which indicated to him that the calls had been made using an ATDS.

123.     Plaintiff Davis received each of the calls described in paragraphs 124-30, above, thirty or more days after he explicitly instructed Defendants to stop calling him.

124.     Each of the above-described calls occurred after Plaintiff Davis registered his cellular telephone number, (615) 336-XXXX, with the National Do-Not-Call Registry.

125.     Plaintiff Davis did not provide prior express consent to receive ATDS generated and/or automated or prerecorded calls on his cellular telephone from, or on behalf of, Defendants.

126.     Plaintiff Davis' privacy has been violated by the above-described calls from, or on behalf of, Defendants and they constitute a nuisance as they are annoying and harassing.

127.     Defendants are responsible for making the above-described ATDS generated and/or automated or prerecorded calls.

128.     Defendants have made a significant number of ATDS generated and/or automated or prerecorded calls to persons on their cellular telephones in Tennessee and throughout the entire United States.

129.     Defendants have made a significant number of telemarketing calls to persons who have registered their telephone numbers with the National Do-Not-Call Registry in Tennessee and throughout the entire United States.

130.     Defendants have made a significant number of telemarketing calls to persons who have explicitly requested that Defendants stop calling them in Tennessee and throughout the entire United States.

131.    Defendants intend to continue to make similar ATDS generated and/or automated prerecorded calls to persons on their cellular telephones in Tennessee and throughout the entire United States.

132.    Defendants intend to continue to make similar ATDS-generated and/or automated or prerecorded calls to persons who have registered their telephone numbers with the National Do-Not-Call Registry in Tennessee and throughout the entire United States.

133.    Defendants intend to continue to make similar ATDS-generated and/or automated or prerecorded calls to persons who have explicitly requested that Defendants stop calling them in Tennessee and throughout the entire United States.

134.    Plaintiffs and all members of the Classes, defined in Paragraph 137, below, have been harmed by the acts of Defendants because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls.

**G.    Factual Allegations Regarding Additional Consumer Complaints**

135.    Unfortunately, Plaintiffs' experiences with Defendants are not unique, as many others have lodged similar complaints after having received telemarketing calls from Defendants.

136.    For example, one website asks, "Did you get a call from 6365426014?"  The following are two examples of such complaints regarding calls from Vehicle Protection Center:

> **Becky H**
> 18 April 2013
>
> Keep getting phone calls on my cell phone from this company... have told them several times to stop calling me and yet the calls continue.. I am even signed up for the Do Not Call Registry.
>
> Caller: Vehicle Protection Center
>
> ****

**Raindrop Thirty-three**
22 Apr 2014

Got a call from this company this morning.  I was checking out the person who called.  When I asked him if he had anything to do with Capital (alias) (the company I have my car with), he said, "Capital (alias).  What's that?"  I said, "Never mind.  If you don't know, I'm not interested.  Good-bye."  I hope he calls me back again, so I can hang up on him.

Caller: Vehicle Protection Center

*See* http://800notes.com/Phone.aspx/1-636-542-6014 (last visited April 4, 2016) (original html

formatting for these excerpted websites is not preserved in this and the following excerpts).

137.    Similar complaints exist concerning calls from NRRM from telephone number

(636) 542-6039:

**Kaye**
17 Jul 2013

Someone named Brittany left message with a different call back number. 800-589-6519. Also referring to an extended warranty on a car I no longer have and havent had for more than a year. Warranty that I did have on it was long expired anyway. The caller ID said NRRM.LL. I am also on the DO NOT CALL LIST.

Caller:  NRRM.LL
Call Type:  Telemarketer

\*\*\*\*

**Dee**
27 May 2015

No message was left. Caller ID showed NRRM, LLC. unfamiliar phone number. Better Business Bureau shows they are an Extended Warranty Vehicle co with a C rating.

Caller:  NRRM, LLC
Call Type:  Telemarketer

*See* http://800notes.com/Phone.aspx/1-636-542-6039 (last visited April 4, 2016).

138.    Others complain of calls from (800) 589-6519, another telephone number that

belongs to Auto Service Agency, and Vehicle Protection Center:

> **rchnlis**
> 3 Oct 2012
>
> Vehicle Protection Center, I have not done business with this
> company and the representative was rude and wanted me to give
> him my address and my full name.  I hung up and called back to
> speak to someone else and it turns out the rude representative did
> remove my number from the file.  They were looking for a Mr.
> Anderson.....[am] I in the Matrix?
>
> Caller: Vehicle Protection Center
>
> **susang5371**
> 6 Feb 2013
>
> I just got a call from 800-589-6519 and the salesman was trying to
> sell me coverage on a car I haven't had in years.  He had my
> address correct but not the car information.  Was VERY rude and
> tried to make me feel stupid because I didn't want coverage on my
> present car.  I told him I was on the Do Not Call list, I didn't want
> coverage and to never call again.
>
> Caller: ? Protection Coverage

*See* http://whocallsme.com/Phone-Number.aspx/8005896519 (last visited April 4, 2016).

139.    Additional complaints, regarding calls from telephone number (800) 429-5432,

also identify Auto Service Agency as the caller.  For example:

> 23 May 2015
> Received several calls this week, one from this # about selling auto
> warranty.( Robocalls.) Today, I decided to tell them to stop calling
> (I'm on DNC) . "Sam" said that Auto Service Agency was part of
> Interstate National Dealership. I told him I had years on my
> warranty and where did he have my name from ? He said
> "collections". ... NOTE: the care was bought CASH in 2011 and
> has the dealers extend[ed] warranty. He went on about the
> excellent coverage that my lower than average long warranty from
> my dealer always has and how theirs is all A++++. He had no
> knowledge of the car, VIN, year - nothing. Total scam. Needless to
> say, I looked up the companies and discovered they have multiple

complaints and the BBB has not registered them (he said A+ BBB).

*See* http://800notes.com/Phone.aspx/1-800-429-5432 (last visited April 4, 2016).

## V.   CLASS ACTION ALLEGATIONS

140.   <u>Class Definitions</u>.  Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiffs bring this case as a class action on behalf of three National Classes (collectively referred to as the "Classes") defined as follows:

> <u>Cell Phone Class</u>:  All persons in the United States to whom:  (a) Defendants and/or a third party acting on Defendants' behalf, made one or more telephone calls; (b) promoting NRRM's goods or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

> <u>Internal Do-Not-Call Class</u>:  All persons in the United States who: (a) received more than one telemarketing call, initiated by Defendants and/or on Defendants' behalf; (b) promoting NRRM's goods or services; (c) more than 30 days after requesting not to receive further calls; (d) in a 12-month period; (e) on their cellular telephone line or residential telephone line; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

> <u>National Do-Not-Call Class</u>:  All persons in the United States who: (a) received more than one call, made by Defendants and/or on Defendants' behalf; (b) promoting NRRM's goods or services; (c) in a 12-month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or residential telephone line number(s) appear on the National Do-Not-Call registry; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

141.   Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

142.   <u>Numerosity</u>.  The Classes are each so numerous that joinder of all members is impracticable.  On information and belief, the Classes each have more than 1,000 members.

Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

143.    <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiffs and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

a.    As to Plaintiffs and the Cell Phone Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice;

b.    As to Plaintiffs and the Cell Phone Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice, thus entitling Plaintiffs and the Cell Phone Class to treble damages;

c.    As to Plaintiffs and the Internal Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 C.F.R. § 64.1200(d) by initiating any call for telemarketing purposes to Plaintiffs and members of the Internal Do-Not-Call Class without following procedures for maintaining a list of persons who request not to receive telemarketing calls;

d.    As to Plaintiffs and the Internal Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A), thus entitling Plaintiffs and the Internal Do-Not-Call Class to treble damages;

e.    As to Plaintiffs and the National Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf

violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their residential telephone numbers with the National Do-Not-Call Registry;

       f.     As to Plaintiffs and the National Do-Not-Call Class, whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their residential telephone numbers with the National Do-Not-Call Registry, thus entitling Plaintiffs and the National Do-Not-Call Class to treble damages;

       g.     Whether Defendants are liable for ATDS generated and/or automated or prerecorded calls promoting NRRM's products and/or services made by Defendants' affiliates, agents, and/or other persons or entities acting on Defendants' behalf;

       h.     Whether Defendants are liable for telephone calls to persons on Defendants' internal do-not-call list made by Defendants' affiliates, agents, and/or other persons and entities acting of Defendants' behalf;

       i.     Whether Defendants are liable for telephone calls to persons on the National Do-Not-Call Registry made by Defendants' affiliates, agents, and/or other persons and entities acting on Defendants' behalf; and

       j.     Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf should be enjoined from violating the TCPA in the future.

    144.    <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of the Classes.  Plaintiffs' claims, like the claims of Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

    145.    <u>Adequacy</u>.  Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the

Classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

146.     <u>Predominance</u>.  Defendants have engaged in a common course of conduct toward Plaintiffs and members of the Classes.  The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

147.     <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendants to comply with the TCPA.  The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

148.     <u>Injunctive and Declaratory Relief Appropriate</u>.  Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiffs allege that the automated calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VI.    FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) – Cellular Telephone Calls – Cell Phone Class)

149.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

150.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Cell Phone Class using an ATDS and/or artificial or prerecorded voice.

151.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiffs and members of the Cell Phone Class presumptively are entitled to an award of $500 in damages for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

152.    Plaintiffs and members of the Cell Phone Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## VII.    SECOND CLAIM FOR RELIEF
### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) – Cellular Telephone Calls – Cell Phone Class)

153.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

154.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls,

except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Cell Phone Class using an ATDS and/or artificial or prerecorded voice.

155.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiffs and members of the Cell Phone Class are entitled to treble damages of up to $1,500 for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

156.    Plaintiffs and members of the Cell Phone Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### VIII.   THIRD CLAIM FOR RELIEF
**(Violations of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) – Internal Do-Not-Call List – Internal Do-Not-Call Class)**

157.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

158.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(d), by initiating any call for telemarketing purposes to Plaintiffs and members of the Internal Do-Not-Call Class, without following procedures for maintaining a list of persons who request not to receive telemarketing calls ("internal do-not-call list"). This includes Defendants' failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

159.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of 47 C.F.R. § 64.1200(d), Plaintiffs and members of the Internal Do-Not-Call Class are entitled to an award of $500 in statutory damages

for each and every call in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

160.   Plaintiffs and members of the Internal Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## IX.   FOURTH CLAIM FOR RELIEF
### (Knowing and/or Willful Violations of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) – Internal Do-Not-Call List – Internal Do-Not-Call Class)

161.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

162.   The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple knowing and/or willful violations of 47 C.F.R. § 64.1200(d), by initiating any call for telemarketing purposes to Plaintiffs and members of the Internal Do-Not-Call Class without following procedures for maintaining a list of persons who request not to receive telemarketing calls.  This includes Defendants' failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

163.   As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's knowing and/or willful violations of 47 C.F.R. § 64.1200(d), Plaintiffs and members of the Internal Do-Not-Call Class are entitled to an award of treble damages of up to $1,500 for each and every call in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

164.   Plaintiffs and members of the Internal Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(d) by failing

to follow procedures for maintaining a list of persons who request not to receive telemarketing calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## X.    FIFTH CLAIM FOR RELIEF
### (Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)

165.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

166.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

167.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the National Do-Not-Call Class are entitled to an award of $500 in statutory damages for each and every call initiated to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

168.    Plaintiffs and members of the National Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any telephone subscriber who has registered his or her telephone numbers with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## XI.    SIXTH CLAIM FOR RELIEF
### (Knowing and/or Willful Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)

169.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

170.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple knowing and/or willful violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

171.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's knowing and/or willful violations of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the National Do-Not-Call Class are entitled to an award of treble damages of up to $1,500 for each and every call made to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

172.    Plaintiffs and members of the National Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any telephone subscriber who has registered their telephone numbers with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Classes, pray for judgment against Defendants as follows:

A.    Certification of the proposed Classes;

B.    Appointment of Plaintiff Mehr and Plaintiff Davis as representatives of the Cell Phone Class, the Internal Do-Not-Call Class, and the National Do-Not-Call Class;

C.    Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.      An award to Plaintiffs and the Classes of damages, as allowed by law;

G.      An award to Plaintiffs and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XIII.   DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted this 11th day of May, 2016.

By:   /s/ Jay Angoff
          Jay Angoff (MO Bar No. 46415)
          Craig L. Briskin (pro hac vice forthcoming)
          Steven A. Skalet (pro hac vice forthcoming)
          MEHRI & SKALET, PLLC
          1250 Connecticut Ave., NW, Suite 300
          Washington, DC 20036
          Telephone:  (202) 822-5100
          Facsimile:  (202) 822-4997
          jay.angoff@findjustice.com
          sskalet@findjustice.com Email:
          cbriskin@findjustice.com

          Stacy M. Bardo (pro hac vice forthcoming)
          Email:  stacy@bardolawpc.com
          One South Dearborn Street, Suite 2100
          Chicago, Illinois 60603
          Telephone:  (312) 219-6980
          Facsimile:  (312) 219-6981

          Beth E. Terrell (pro hac vice forthcoming)
          Email:  bterrell@terrellmarshall.com
          Jennifer Rust Murray (pro hac vice forthcoming)
          Email:  jmurray@terrellmarshall.com
          Samuel J. Strauss (pro hac vice forthcoming)
          Email:  sstrauss@terrellmarshall.com
          TERRELL MARSHALL LAW GROUP PLLC
          936 North 34th Street, Suite 300
          Seattle, Washington  98103-8869
          Telephone:  (206) 816-6603
          Facsimile:  (206) 319-5450

          *Attorneys for Plaintiffs*